In re ARMESWORTHEY'S ESTATE.
HANSEN, Appellant, v. RUSHTON, Respondent.

No. 8527

Submitted June 8, 1945. Decided June 30, 1945.

160 Pac. (2d) 472

Mr. Al Hansen, of Baker, for appellant.

Mr. D. R. Young, of Baker, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Louis R. Armesworthey died testate on the 30th day of March, 1932, leaving real and personal property in Fallon county. He left as legatees and devisees Mrs. Marvin Wardlow, Mrs. Catherine Amous and Mrs. May Grigsby, three sisters, all living in Texas. Ed P. O'Brien and Clark Farris were named in the will as executors. O'Brien predeceased the testator and Farris declined to accept the trust and recommended the appointment of L. E. Rushton, cashier of the Baker National Bank, as administrator. Rushton was appointed and qualified as administrator. In the course of time he filed his final account and petition for distribution of the estate. This was noticed for hearing and on the 26th day of January, 1935, the court entered a decree approving the final acrount and distributing the property to the above-named heirs. Later, and on July 3, 1935, he was finally discharged as such administrator by order of the court.

The property of the estate consisted of some cattle on which there stood a mortgage to the Baker National Bank for about $1,200, other items of personal property and real estate.

Before the estate was distributed Mrs. Catherine Amous died and Al Hansen, Esq., an attorney at law of Baker, was appointed administrator of her estate. As such administrator he filed a petition in the district court of Fallon county on May 8, 1942, to set aside the decree of final discharge of the administrator of the Armesworthey Estate and for an accounting. The petition in substance charges fraud on the part of the administrator and his counsel in the management of the affairs of the estate and failure to account for all of the property of the estate. It is alleged that the fraud was not discovered until after April 10, 1942. Later a supplemental petition was filed by Mr. Hansen.

The answer of Mr. Rushton, the administrator, amounted to a general denial of the allegations of fraud but admits some error and irregularities in the proceedings in settling the estate. It contains an affirmative plea to the effect that the decree ap-

proving the final account and distributing the estate is res adjudicata and that the heirs of Louis H. Armesworthey are estopped by their laches from questioning the proceedings in the estate matter.

The reply denied the affirmative allegations of the answer. After hearing the court made findings of fact and conclusions of law and entered an order dismissing the petition and supplemental petition on the merits. The court expressly found there was no fraud upon the part of the administrator or his counsel. When the petition was filed the court made an ex parte order suspending the administrator and an order directing him to file an accounting. Upon motion of defendant the court held these orders void and in excess of jurisdiction and error is assigned in so doing.

The court was right in declaring the ex parte orders void. The administrator had already been discharged by order of the court and was no longer the administrator of the estate and the order purporting to suspend him as administrator was a nullity because it had no fact basis upon which to operate. The order directing him to file an accounting as administrator was also void since he was no longer administrator and since he had already filed his final account which had been approved by the court.

It is true that Mr. Rushton did some acts after his discharge as administrator by which he purported to act as such. The record shows that he sold some items of personal property of small value after his discharge and sent the proceeds to the heirs and also endorsed some small checks as acting administrator and delivered them to the heirs, but these acts did not serve to restore him to the position of administrator nor require a further accounting as such. The heirs received the benefit of whatever acts he did and though the acts were irregular they did not constitute fraud nor did they justify the ex parte orders which the court properly held were void for want of jurisdiction.

The next assignment of errer relates to the action of the court in striking certain portions of the petition. The

allegations stricken were mainly allegations concerning transactions after the settlement of the final account, distribution of the estate and discharge of the administrator. The proceeding being based upon section 10303, Revised Codes, any fraud relied upon must be fraud occurring before the settlement of the final account. The court was right in striking allegations as to transactions or events after the settlement of the final account.

Other allegations stricken were either immaterial, and irrelevant or matters which affected no substantial right of petitioner for they were not sufficient either of themselves or with other allegations to indicate any fraud on the part of the administrator or his counsel.

Error is assigned in overruling petitioner's motion to strike ▮ from the answer of defendant. Among allegations sought to be stricken were allegations that defendant at the time of the distribution of the estate did not know that Catherine Amous had died; also, allegations that after the estate was distributed defendant delivered a watch to Attorney Young, which had been inadvertently overlooked in the preparation of the final account, who transmitted it to W. McCauly, in Texas, whom the administrator believed in good faith held a power of attorney from the heirs. The court did not err in refusing to strike these allegations.

Other allegations which the court refused to strike from the answer were either relevant and material or do not appear to have been of such character as to in any wise affect the result of the action. The court's refusal to strike the allegations did not affect any substantial right of petitioner.

By several assignments of error petitioner questions the propriety of the court's finding that the settlement of the final account was conclusive upon the heirs. Section 10303 expressly makes the order settling the final account conclusive against all persons interested in the estate with the right in them to reopen or set aside the decree of settlement upon the ground of fraud. Hence, as we view the case, the determinative point in the case is whether the court was warranted under the evi-

dence in finding that there was no fraud on the part of the administrator or his counsel. The record discloses that upon the death of Mr. Armesworthey his will was filed in the office of the clerk of the district court of Fallon county; Farris, the survivor of the two executors named in the will, declined to accept the trust but filed a written statement that he would assist the executor appointed by the court in looking after the estate. After Rushton was appointed administrator he gave the usual notice to creditors requiring the presentation of claims. Farris, L. W. Busch and Eph Keirle were appointed appraisers of the estate. The appraisers examined the property and filed an inventory and appraisement.

In the petition for the probate of the will, which was prepared by Mr. Young, the attorney representing the estate, and sent to Mrs. Wardlow for signature, it was recited that there were approximately 120 head of cattle left by the deceased. The inventory and appraisement, in listing the cattle, described them as follows:

"53 cows, some with calves

| | | |
|---|---|---|
| per cow with calf | $30.00 | $1590.00 |
| 48 Yearling cattle | 17.50 | 840.00 |
| 1 Roan Bull | | 50.00 |
| 1 half interest in White-Face Bull | | 25.00" |

Thus the inventory and appraisement shows a total of 102½ head. Petitioner contends that there were in fact 120 head of cattle and that the administrator should be required to account for the other 17½ head. There is no evidence in the record that the administrator ever came into possession of more cattle than he accounted for and the court was warranted in finding from the evidence that there were in fact no more cattle owned by the decedent at the time of his death than those accounted for by the administrator. The evidence shows that the administrator relied to a great extent in settling the estate upon Clark Farris who lived near the property of deceased and who was familiar with it. He listed but 102½ head in the inventory and appraisement after making an actual count. Upon petition of

the administrator an order was made authorizing the sale of all of the personal property of the estate. Pursuant to this order all of the cattle were sold as well as other personal property. A return of sale was made to the court and approved. The net amount received for the cattle was accounted for by the administrator. The gross amount received was $2964 and a down payment of $500, but the evidence shows that upon a count of the number of head of cattle delivered to the buyer there was a shortage and the administrator refunded to the buyer the sum of $107.84 and he also gave a check for $45 for the expense of rounding up the cattle, leaving a net amount of $2811.16 as the final payment which was accounted for, together with the down payment of $500.

There was evidence in the record from which the court was ▮ justified in holding that the administrator has accounted for all the cattle that came into his possession and that there was no fraud on his part or of his counsel. All of the cash received upon a sale of the personal property went to pay claims of creditors, expenses of administration and of last illness except that each of the heirs had been sent a small legacy. The balance of the property, consisting of real estate and some personal property, was distributed to the heirs. A certified copy of the order approving the administrator's final account and decree of distribution was mailed to the heirs in 1935. The court was correct in holding that there was no legal, competent or sufficient evidence that either the administrator or his counsel were guilty of fraud in probating the estate.

Petitioner contends that the decree of distribution was void ▮ in that one of the persons to whom the property was distributed (Mrs. Amous) was dead at the time the decree of distribution was entered. The cases of In re Parsell's Estate, 190 Cal. 454, 213 Pac. 40, 25 A. L. R. 1561, and Conlin v. Blanchard, 219 Cal. 632, 28 Pac. (2d) 12, are relied on in support of that contention. We do not agree with these cases. That they are based upon a legal concept repudiated by the weight of modern authority is pointed out in the note in 25 A. L. R. 1563. The

title to testator's real estate vests in the devisees from the moment of his death, subject to the right of the executor to its possession for the purposes of administration until the estate is settled or until it is delivered over to them by order of court, the decree of distribution simply releasing the property from the conditions it was subject to during the period of administration. Section 7040, Revised Codes; In re Estate of Deschamps, 65 Mont. 207, 212 Pac. 512; In re Connelly's Estate, 73 Mont. 35, 235 Pac. 408; Rummey v. Skinner, 64 Mont. 75, 208 Pac. 895; In re Clark's Estate, 105 Mont. 401, 74 Pac. (2d) 401, 114 A. L. R. 496.

The legal effect of the decree of distribhtion is merely to certify that claims of creditors and administration expenses, etc., have been met. The fact that the decree distributed property to a dead person is but an irregularity and not a question going to the jurisdiction of the court. Title had already passed to Mrs. Amous upon the death of Mr. Armesworthey subject to being divested for the payment of claims of creditors or expenses of administration. All claims having been paid, the title was in Mrs. Amous without the formality of a decree of distribution. The decree merely confirmed that which had already taken place together with a declaration by the court that the title was free from contingent claims of any kind.

The judgment is affirmed.

Mr. Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle, Concur.